IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| AMERITAS LIFE INSURANCE CORP., IN ITS OWN CAPACITY AND AS SUCCESSOR-IN-INTEREST TO THE UNION CENTRAL LIFE INSURANCE COMPANY, et al., | : : : : : : | Case No. 1:19-cv-569<br><br>Judge Matthew W. McFarland |
| Plaintiffs, | : : | |
| v. | : : | |
| FEDERAL INSURANCE COMPANY, et al., | : : : | |
| Defendants. | : | |

## ORDER GRANTING MOTION TO DISMISS (Doc. 11)

Ameritas Life Insurance Corp., in its own capacity and as successor-in-interest to The Union Central Life Insurance Company, and Ameritas Holding Company (collectively, Ameritas) brought suit against Federal Insurance Company, Twin City Fire Insurance Co., and Arch Insurance Company in the Hamilton County Court of Common Pleas. (Doc. 5.) Arch, with the consent of Federal and Twin City, removed the case to the Southern District of Ohio under 28 U.S.C. § 1332(a) based on the Court's diversity jurisdiction. (Doc. 1.) Shortly afterwards, Federal moved to stay or dismiss Ameritas's claims against it. That motion is the matter presently before the Court. (Doc. 11.)

For the following reasons, the Court denies the motion to stay but grants the motion to dismiss the claims against Federal.

1

## FACTS

At the center of this dispute is a financial institution bond, or fidelity bond ("Bond"). In December 2013, Ameritas, on behalf of itself, The Union Central Life Insurance Company, and other parties, purchased the Bond from Federal for the period of January 1, 2014 to January 1, 2015. (Doc 5, Complaint at ¶ 41.) As the court in the District of Nebraska has observed, three lawsuits provide the context for this dispute:

(1) A 2016 lawsuit, brought by Ameritas against Federal, filed in the U.S. District Court for the District of Nebraska. That court construed the same or similar bond language at issue in Lawsuits 2 and 3 below and ruled in Federal's favor. *Ameritas Life Insurance Corporation v. Federal Insurance Company*, No. 4:16-cv-3006, 2017 WL 7048257 (D. Neb. Oct. 25, 2017) ("*Ameritas I*").

(2) A declaratory judgment action, brought by Federal against Ameritas in April 2019, also filed in the District of Nebraska. Federal requested the court to declare that a bond it issued to Ameritas did not cover Ameritas's litigation and settlement costs in third-party litigation. *Fed. Ins. Co. v. Ameritas Life Insurance Corp., et al.*, No. 4:19-cv-3035, 2019 WL 5310042 (D. Neb. Oct. 21, 2019).

(3) This lawsuit, brought by Ameritas against Federal and other defendants in June 2019. Ameritas requests declaratory and monetary relief for Federal's refusal to cover litigation and settlement costs in the same third-party litigation involved in Lawsuit 2.

A quick tour through these cases will help explain the present matter. First up is *Ameritas I*, the 2016 Nebraska lawsuit. There, Ameritas and Federal litigated the

application of a financial institution bond as it related to the dishonesty of a contracted insurance agent, Jason Muskey. *Ameritas I*, 2017 WL 7048257, at *1. An investigation revealed that Muskey had defrauded several Ameritas customers. He had used two kinds of schemes to steal from them. In the first scheme, he would withdraw money directly from customers' accounts—Ameritas would send the checks believing the withdrawals were legitimate, when in fact Muskey was fraudulently cashing them. In the second scheme, Muskey convinced customers to voluntarily transfer funds from their accounts to Muskey's investment company. He told them he would reinvest the funds. But instead, he pocketed them.

Muskey's victims sought reimbursement from Ameritas. Ameritas settled the claims. Then it sought reimbursement from Federal under its financial institution bond for its losses. Federal covered losses for the first scheme but not the second. Its theory was that Ameritas did not suffer a direct loss under the second scheme. The customers suffered the loss, and Ameritas absorbed the loss through settlements. Such liability, in Federal's view, was too remote to trigger the bond's coverage. Ameritas sued Federal. Applying Nebraska law, the court held that "direct," as used in the bond, required a "more immediate nexus" than what Ameritas urged. *Id.* at *4. Federal won on summary judgment. *Id.* at *5.

Now as to Lawsuit 2. In December 2018, Ameritas settled another dispute involving the alleged misdeeds of another contractor, Dee Allen Randall. Those settlements set Ameritas back approximately $14.7 million, not including defense costs. (Doc. 1-1 at ¶¶ 34, 35; Doc. 20 at 5.) Ameritas sought coverage from Federal. Federal

3

refused to cover the costs. Ameritas was left with the expenses of defending and settling the Randall lawsuits. The parties discussed settlement and exchanged documents for a few months. *Fed. Ins. Co.*, 2019 WL 5310042, at *4-5. (*See also* Doc. 20 at 5-6.) But before they resolved the issue, Federal filed a declaratory judgment complaint in the District of Nebraska, the same forum as *Ameritas I*. (Doc. 1-9.) Federal asked the court to find that the financial institution bond it issued to Ameritas did not cover amounts Ameritas incurred to defend and settle the third-liability claims arising from Randall's alleged fraud. *Fed. Ins. Co.*, 2019 WL 5310042, at *1. It relied on the same reasoning the court had used in *Ameritas I*. (*See* Doc. 1-9 at ¶¶ 16-18, 31, 38, 39, 47.)

Then came Lawsuit 3—this case. While Lawsuit 2 was pending, Ameritas sued Federal and other defendants in the Court of Common Pleas of Hamilton County, Ohio. It sought declaratory and monetary relief for the insurers' failure to reimburse the costs of defending and settling the Randall lawsuits. The case was removed to this Court. Like the claims in Lawsuit 2, the allegations in this action involve Randall's alleged dishonest behavior and the costs of defending and settling the resulting lawsuits. (Doc. 1-1 at ¶¶ 1, 33-35.) Ameritas claims entitlement to coverage under the Bond.

Now pending is Federal's motion to stay or dismiss.

## ANALYSIS

Federal's motion proceeds in two parts. First, it argues that this Court should stay the matter so that the District of Nebraska, as the first-filed court, may decide whether to exercise jurisdiction over Lawsuit 2. Second, it maintains that, in the alternative, the Court should dismiss the action against Federal as time-barred.

4

### A. The motion to stay is moot.

After the parties briefed the instant motion to stay or dismiss, the District of Nebraska dismissed Lawsuit 2. That court noted that the Declaratory Judgment Act afforded district courts discretion in deciding whether to exercise jurisdiction over claims that seek declaratory judgment. *Fed. Ins. Co.*, 2019 WL 5310042, at *3. It acknowledged that both it and this Court had concurrent jurisdiction over the claims between these parties. *Id.* And it also recognized that it, being the first-filed court, had priority to consider the case. *Id.* (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). But it found that "compelling circumstances" militated against application of the first-to-file principle. Those circumstances included Federal's notice that Ameritas was prepared to file suit if Federal would not negotiate settlements and Federal's pursuit of declaratory relief as compared to Ameritas's pursuit of enforcement of contracts as the "true plaintiff." *Id.* at *4. These things led the Nebraska court to find that Federal's declaratory judgment action was "preemptive." *Id.* It reasoned too that this Ohio lawsuit was the only "complete" action because it "involves a more complete set of facts, parties, and claims, and entirely incorporates the action for declaratory judgment now pending in this court." *Id.* at *5. On these bases, the court declined to exercise jurisdiction and dismissed the complaint. *Id.* An appeal is now pending before the Eighth Circuit. (*See Federal Insurance Company v. Ameritas Life Ins., et al.*, CA8 Doc. # 19-3508.)

Since the Nebraska action has been decided at the district level, and the parties have not supplemented their briefing directing the Court to take any different action,

5

Federal's first request is moot. The Court will therefore focus on Federal's alternative request to dismiss the claims against it as time-barred.

### B. The Court must dismiss the suit as untimely.

Rule 12(b)(6) allows, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." The Court accepts the complaint's factual allegations as true, but is not bound to do the same for a complaint's legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the claim for relief must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint's factual content should allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* A complaint that lacks such plausibility warrants dismissal. *Id.*

Federal maintains that Nebraska law applies, as it did in *Ameritas I*. But Federal claims that dismissal is still appropriate under Ohio law. Federal invokes the Bond's suit-limitations provision in Condition 7(d), which prohibits suits brought "after the expiration of twenty-four (24) months from the discovery of such loss." (Doc. 1-1 at Page ID 47.) In Federal's view, the plaintiffs knew about Randall's alleged fraud and the claims against them in 2014. It points to allegations in the complaint that, on August 5, 2014, "the Randall trustee, acting in his capacity as trustee for victims of Randall's and his sub-agents' Ponzi scheme, filed in Utah federal court a complaint against Union Central, Ameritas Life, and two other[] Ameritas Holding subsidiaries." (Doc. 5, Complaint at ¶ 25.) Federal argues that, despite being aware of (1) Randall's alleged dishonesty in 2014, (2) the resulting claims against them in 2014, and (3) Federal's denial of coverage in 2014,

6

plaintiffs did not file this action until 2019—much longer than 24 months after Ameritas discovered the loss.

This Court may resolve issues of contract interpretation in reviewing a motion to dismiss. *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012). Generally, a motion to dismiss is not the vehicle for dismissing claims for being brought untimely, for instance, if the defendant claims a status of limitations bars the suit. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). But it is well established that parties may contract for an abridged limitations period, as long as it is reasonable. *In re Alfes*, 709 F.3d 631, 640 (6th Cir. 2013); *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 709 (6th Cir. 1992); *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52, 80 N.E. 955 (1907). "Ohio law permits contractual modification of the applicable statute of limitations if the modification is reasonable." *Arcade Co. v. Arcade, LLC*, 105 F. App'x 808, 810 (6th Cir. 2004) (citing *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 635 N.E.2d 317, 321 (1994)). And, in the case of a reasonable and unambiguous contractual limitation on when a party may bring suit, dismissal is appropriate if the complaint affirmatively shows that the action is time-barred. *Id.*; *Pike v. Gov't Employees Ins. Co.*, 174 F. App'x 311, 317 (6th Cir. 2006) (affirming dismissal of insurance case brought after the reasonable contractual limitation period).

The Bond forecloses Ameritas's suit against Federal. Two provisions in the Bond resolve the issue: Condition 7(d)'s 24-month limitation on lawsuits and Condition 6's definition of discovery. First, the limitation provision:

> Legal proceedings for the recovery of *any loss* under this Bond *shall not be brought* prior to the expiration of sixty (60) days after the proof of loss is filed with the COMPANY or *after the expiration of twenty-four (24) months*

7

*from the discovery of such loss.*

(Doc. 5 at Page ID 355, Condition 7(d) (emphasis added).) The disjunctive "or" establishes two distinct limitations on the right to file a lawsuit under this Bond. First, no party may bring suit until 60 days after it submits a proof of loss. Second, no party may bring suit more than 24 months after discovery of the loss. Each limitation carries its own different triggering event. For the former, the triggering event is the filing of the proof of loss—no suits *before* the 60-day period after the insured files the proof of loss. For the latter, the triggering event is the discovery of the loss—no suits *after* the expiration of 24 months from the discovery of the loss. The word "or" separates the two limitations, showing that each limitation works independently. So violation of either provision constitutes a breach of the Bond.

The 24-month-after-discovery limitation is the one at issue here. The operative language, then, reads, "Legal proceedings for the recovery of *any loss* under this Bond *shall not be brought . . . after the expiration of twenty-four (24) months from the discovery of such loss.*" (*Id.* (emphasis added).) So what does "discovery" mean? The Bond tells us:

> This Bond applies only to loss first discovered by an officer of the ASSURED during the BOND PERIOD. Discovery occurs at the *earlier* of an officer of the ASSURED *being aware of*:
> a. facts which may subsequently result in a loss of a type covered by this Bond, or
> b. *an actual or potential claim in which it is alleged that the ASSURED is liable to a third party*
> regardless of when the act or acts causing or contributing to such loss occurred *even though* the amount of loss does not exceed the applicable DEDUCTIBLE AMOUNT, or *the exact amount or details of loss may not then be known.*

(Doc. 5 at Page ID 355, Condition 6 (emphasis added).) The Bond's definition of

8

"discovery" focuses on Ameritas's awareness of specified information. That information could either be facts that may later lead to a coverable loss, or it could be awareness of liability claims, actual or potential, against Ameritas—even if Ameritas does not then know "the exact amount or details of loss." (*Id.*) So discovery unambiguously requires Ameritas's awareness of one of the two categories of information, but not all the details relevant to just how big the loss will be. The 24-month limitation expressly incorporates these definitions of "discovery" when it provides that no legal proceedings shall be brought after 24 months have passed since "the *discovery* of [any] loss." (Doc. 5 at Page ID 355, Condition 7(d).)

So when did Ameritas discover the loss? The complaint provides the answer: no later than August 2014, when Ameritas was sued in relation to Randall's and his sub-agent's alleged fraudulent schemes. (Complaint, Doc. 5, at ¶ 25.) These claims contained allegations that "Union Central and its co-defendants were liable to Randall's victims based on various legal theories" and sought millions in damages. (*Id.* at ¶¶ 27, 28.) But from "the outset"—that is, in 2014—Federal denied the Randall claims. (*Id.* at ¶ 58.) And, "during the four-plus years that these claims were pending and being litigated at great expense to Plaintiffs, Plaintiffs were forced to defend these claims and negotiate these settlements . . . ." (*Id.* at ¶ 36.)

Accepting the allegations in the complaint as true, Ameritas was clearly aware of these claims in 2014. It had to have been—it was defending them. (*Id.* at ¶ 29.) The claims plainly alleged that Union Central and the Ameritas parties were liable to third parties, Randall's victims. (*Id.* at ¶¶ 27, 28.) So, under the discovery definition in

9

Condition 6, discovery occurred no later than 2014. And, under the same definition, it is of no moment that the exact amount or details of the loss were not known in 2014. (Doc. 5 at Page ID 355, Condition 6.) Under this unambiguous language, it is irrelevant that Ameritas did not know the full amount of the loss until it settled the claims. The First Circuit interpreted almost identical bond language and found that the suit was untimely. *F.D.I.C. v. Ins. Co. of N. Am.*, 105 F.3d 778, 783 (1st Cir. 1997) ("The Bond . . . does not allow the insured to wait until the claim is proved."). So it is here. The dispositive fact, against this contract language, is that Ameritas knew of claims against it in 2014. That knowledge triggered the limitations on lawsuits brought more than 24 months later. Ameritas failed to bring this cause within 24 months of discovering the loss. For these reasons, the Bond bars this lawsuit.

Ameritas does not deny awareness of the claims in 2014. Instead, it offers some different interpretations of the Bond. First, it claims that there was no covered loss until 2018. It supports this position by appeal to Bond language about giving notice of legal proceedings:

> The ASSURED shall notify the COMPANY at the earliest practical moment, not to exceed sixty (60) days after the ASSURED receives notice, of any legal proceeding brought to determine the ASSURED's liability for any loss, claim or damage which, *if established*, would constitute a collectible loss under this Bond.

(Bond, General Agreement E, Doc. 5 at 345 (emphasis added).) Under Ameritas's reading, this language means that a loss needs to be "established" before it constitutes a "collectible loss." And, in its view, it takes a judgment or a settlement to "establish" a collectible loss or claim. The settlements didn't occur until 2018. To Ameritas, that means

10

there was no actionable loss under Condition 7(d) until Ameritas discovered the amount of the loss by paying out the settlements. *Russell Gasket Co. v. Phoenix of Hartford Ins. Co.*, 512 F.2d 205, 208 (6th Cir. 1975) ("under Ohio law, 'discovery of loss' does not occur until the insured has had a reasonable time to discover the extent and amount of the loss").

The text of General Agreement E simply does not support the weight Ameritas puts on it. The problem with Ameritas's reading is that it supplants the Bond's plain and unambiguous language with terms to which the parties never agreed. For starters, *Russell Gasket* applied a rule from 1931 that provided an insured a reasonable time to discover the extent and amount of a loss. 512 F.2d at 208 (citing *Wolinsky v. National Casualty Co.*, 124 Ohio St. 216, 220, 177 N.E. 588, 589 (Ohio 1931). But this Bond contains its own definition of discovery, so *Russell Gasket* does not apply. Furthermore, General Agreement E applies to notice of legal proceedings against Ameritas—it does not purport to qualify the limitations provision in Condition 7(d) or the definition of discovery in Condition 6. But more importantly, Ameritas's reading clashes with the clearly defined meaning of discovery in Condition 6: discovery occurs upon awareness of actual or potential claims "*even though . . . the exact amount or details of loss may not then be known.*" (Doc. 5 at Page ID 355, Condition 6.) This language evidences the parties' express agreement that discovery does not depend on knowing the full extent of the loss. Nothing in General Agreement E contradicts or even modifies that agreement.

In a related vein, Ameritas argues that the 24-month limitations period is tolled until a loss becomes fixed. Ameritas maintains that Condition 7(d) requires it to file the proof of loss, then wait 60 days before bringing suit. And "proof of loss" means "a

11

document from the claimant that provides sufficient information from which the insurer can determine the existence and the amount of the claim." Ohio Admin. Code 3901-1-54(C)(17). Plus, Condition 7(b) requires the proof of loss to be "duly sworn to, with full particulars, within six (6) months after such discovery." (Doc. 5 at Page ID 355.) Since a proof of loss requires the "full particulars" and "the amount of the claim," and since Condition 7(d) requires a filing of a proof of loss, then, according to Ameritas, it could not have submitted any claim until it finalized the settlement amounts in December 2018. This means, in Ameritas's view, that the 24-month period was tolled until December 2018, when a proof of loss could have been reduced to a definitive amount.

But this position fares no better against the plain terms of Conditions 6 and 7. Condition 7(d) clearly provides that both limitations apply. True, the Bond requires a proof of loss to be filed before the insured may bring legal proceedings. (Doc. 5 at Page ID 355 ("Legal proceedings [for recovery] . . . shall not be brought prior to the expiration of sixty (60) days after the proof of loss is filed . . . .").) But the 24-month limitation does not require, or have anything to do with, a proof of loss. Rather, the 24-month limitation has its own triggering event: *discovery* of the loss. And, indeed, discovery is contractually defined in the Bond to be an event that may occur "even though . . . the exact amount or details of loss may not then be known." (Doc. 5 at Page ID 355, Condition 6.) The disjunctive "or" in Condition 7(d) shows that the 24-month limitation operates independently of the 60-day/proof of loss provision. That means the Bond still bars Ameritas's claims if Ameritas discovered the loss more than 24 months before bringing the suit. Condition 7(b)'s discussion of proofs of loss, therefore, is off the point. *See City*

12

*Loan & Sav. Co. v. Employers' Liab. Assur. Corp., Ltd.*, 249 F. Supp. 633, 658 (N.D. Ohio 1964), *aff'd sub nom. City Loan & Sav. Co. v. Employers' Liab. Assurance Corp.*, 356 F.2d 941 (6th Cir. 1966). ("The knowledge or discovery of dishonesty does not depend upon knowledge or discovery of the full scope and exact details of the entire affair.").

Since the parties to an insurance contract may provide for reasonable limitations on the time within which they may bring a suit, *Appel*, 76 Ohio St. 52, 80 N.E. at 955-956, and Ameritas and Federal have done just that in unambiguous language, the Court must enforce the terms of the Bond and dismiss the claims against Federal as untimely.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Federal's motion. Since the request to stay is moot, the Court denies that part of the motion. But since the contractual limitation in the Bond bars this suit against Federal, the Court dismisses Counts 1 and 2 of the complaint. Accordingly, this action shall proceed on Counts 3 and 4 against Twin City and Counts 5 and 6 against Arch.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND